2021 PA Super 244

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VISMANI CANALES CARMENATES | : | No. 1045 MDA 2019 |

Appeal from the Suppression Order Entered June 25, 2019
In the Court of Common Pleas of Clinton County Criminal Division at
No(s): CP-18-CR-0000623-2018

BEFORE: PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., OLSON,
J., DUBOW, J., KUNSELMAN, J., MURRAY, J., and McCAFFERY, J.

OPINION BY DUBOW, J.:                              **FILED: DECEMBER 14, 2021**

The Commonwealth of Pennsylvania appeals from the June 25, 2019 Order granting the Motion to Suppress filed by Vismani Canales Carmenates ("Carmenates"). The Commonwealth argues that the suppression court erred in relying on waived arguments, making factual findings that contradicted the testimony, and granting Carmenates' Motion to Suppress. After careful review, we conclude that Carmenates did not knowingly, intelligently, or voluntarily consent to the search of his vehicle. Thus, we affirm the Order granting Carmenates' Motion to Suppress.

Following a traffic stop, the Commonwealth charged Carmenates with Possession With Intent to Deliver a Controlled Substance and Possession of Drug Paraphernalia.[1] Carmenates filed an Omnibus Pre-Trial Motion, including

---

[1] 35 P.S. §§ 780-113(a)(3) and 780-113(a)(32), respectively.

a Motion to Suppress, contending that the traffic stop was illegal and his consent to search the vehicle was not knowing, intelligent, or voluntary and/or was invalid because it was the product of an unconstitutional detention.

The suppression court held a hearing on the Motion to Suppress, at which Pennsylvania State Trooper Jeremy Hoy and Carmenates testified.[2] The court also viewed and admitted into evidence the DVD recording of Trooper Hoy's and Carmenates' interaction produced by the mobile video recording ("MVR") unit on Trooper Hoy's patrol vehicle, and a photograph of items hanging from the rearview mirror of Carmenates' vehicle. From the evidence submitted, the suppression court found the following facts.

On December 12, 2018, Trooper Hoy was working in the Bureau of Criminal Investigation, Drug Law Enforcement, Central SHIELD Unit.[3] He was on stationary patrol near the Lamar exit of Interstate 80 when he observed Carmenates' vehicle following a tractor-trailer at what Trooper Hoy considered an unsafe distance and at a speed slower than the flow of traffic.

Trooper Hoy pulled over Carmenates' car using lights and a siren. Trooper Hoy exited his patrol vehicle. As he approached the passenger side

---

[2] The suppression court qualified Trooper Hoy to testify as an expert in the field of criminal interdiction.

[3] The SHIELD unit is a "criminal interdiction unit assigned primarily to work the interstates and highways in Pennsylvania[]" by "conducting traffic stops, attempting to ferret out criminal activity to help slow down the flow of illegal activities in the Commonwealth of Pennsylvania." N.T. Suppression, 5/3/19, at 6-7.

window of Carmenates' vehicle[4] he noticed in the back of the vehicle several large duffel bags and a suitcase, covered by a tan sheet and a large stuffed toy bear. He also observed numerous fast food and snack items, a fast food drink and water in the cup holders, two air freshener spray bottles, and "religious paraphernalia" hanging from his rearview mirror. Trooper Hoy testified that these items could be indicators of criminality.[5] Trooper Hoy did not smell any odor of marijuana or observe any drugs or drug paraphernalia, cash, weapons, or contraband of any type, nor did he observe Carmenates attempt to conceal anything or make any furtive movements.

When Trooper Hoy attempted to speak with Carmenates, Carmenates immediately indicated that he spoke only Spanish. Trooper Hoy does not speak Spanish, but told Carmenates that they "could make it work."[6] To "make it work," Trooper Hoy employed the Google Translate application ("Google Translate") on his cell phone to translate his statements from English

---

[4] Trooper Hoy testified that for safety reasons he always approaches a driver during a traffic stop from the passenger side of the vehicle. N.T. at 63.

[5] Suppression Court Opinion ("Opinion") at 4-5. The "religious paraphernalia" consisted of two elephants and a picture of woman hanging from Carmenates' rearview mirror. Trooper Hoy could not identify the woman or with which, if any, religion these items were associated. *See* N.T. at 69-70. The suppression court concluded after reviewing the photograph of Carmenates' rearview mirror that the "religious paraphernalia" observed by Trooper Hoy was not, in fact, religious paraphernalia and it rejected the Commonwealth's allegation that religious materials generally are an indication of criminal activity. *See* Opinion at 5.

[6] Opinion at 4.

to Spanish and Carmenates' statements from Spanish to English.[7] Trooper Hoy indicated that he did not have any problems understanding the responses he received from Carmenates from the Google Translate application and that Carmenates never told Trooper Hoy that he did not understand a question Trooper Hoy asked him through Google Translate. Trooper Hoy conceded, however, that Google Translate is "not 100 percent accurate at times."[8]

Carmenates provided Trooper Hoy with Carmenates' drivers' license, insurance card, and registration card. Trooper Hoy requested that Carmenates exit the vehicle. Carmenates complied and Trooper Hoy searched him for weapons.[9] Trooper Hoy instructed Carmenates to stand outside the patrol vehicle's front passenger window in the cold while Trooper Hoy conducted a criminal history check inside his heated patrol vehicle using the

---

[7] To use Google Translate, Trooper Hoy and Carmenates handed Trooper Hoy's phone back and forth, each taking turns recording his voice and waiting for the application to translate. If either man interrupted the other, or if one of them paused before finishing his sentence, the recorder stopped recording and started translating.

[8] N.T. at 79.

[9] Trooper Hoy described Carmenates' hands as shaking when Carmenates handed Trooper Hoy these items and while passing Trooper Hoy's cell phone back and forth. The suppression court rejected the Commonwealth's suggestion that the court should infer from Carmenates' shaking hands that he was nervous because he was conducting criminal activities. Instead, the court inferred that Carmenates—a member of the travelling public who Trooper Hoy had placed out in the cold weather without the opportunity to retrieve an outercoat—was cold. Opinion at 6.

vehicle's computer.[10] Trooper Hoy explained that he remained in his warm patrol vehicle because he needed to use his computer to verify Carmenates' identity, it was cold out, and it was easier for Trooper Hoy to hear the Google Translate translations inside the vehicle.

Trooper Hoy stated that he intended to issue a warning to Carmenates—but before doing so, and before returning Carmenates' documents to him and ending the traffic stop, Trooper Hoy asked him about his travel plans. During this portion of the MVR recording, Carmenates is heard giving lengthy responses in Spanish to Trooper Hoy's questions. However, many of Carmenates' responses were not translated by Google Translate at all and Google Translate translated some lengthy responses as short, nonsensical English statements, including the statement "you already see the see a bear for the girl the suitcase with the coat over coat." MVR Recording, 12/12/18, at 7:39-8:19.

Trooper Hoy had copies of a written "consent to search" form already translated into Spanish in his vehicle. Nevertheless, approximately 12 minutes into the traffic stop, Trooper Hoy chose to use Google Translate to obtain Carmenates' consent to "see" his luggage.[11] Trooper Hoy never offered

---

[10] Carmenates, who was not wearing a jacket, told Trooper Hoy that he was cold. In response, and because "[i]t was a little chilly," Trooper Hoy pointed the police car's heat vents toward Carmenates as he stood outside to "warm his hands, stay warm throughout the encounter." N.T. at 32.

[11] Opinion at 7.

Carmenates the opportunity to review the Spanish-language consent form. While still standing jacketless outside the police vehicle in the cold, Carmenates replied "si" to the question of whether Trooper Hoy could "see" Carmenates' luggage. Carmenates then proceeded to walk towards his vehicle.

Trooper Hoy then exited his vehicle and followed Carmenates to Carmenates' vehicle. Carmenates opened the rear door of his vehicle and retrieved a suitcase. Trooper Hoy, however, using gestures rather than words, directed Carmenates to a black duffel bag located under the tan bed sheet and large stuffed toy bear. Carmenates retrieved the black duffel bag and complied with Trooper Hoy's non-verbal direction to open it.[12] The black duffel bag contained a large amount of marijuana packaged and vacuum sealed in plastic bags. Trooper Hoy then handcuffed Carmenates and searched the remaining duffel bags. In the bags, Trooper Hoy discovered approximately 39 pounds of marijuana.

The testimony and MVR recording indicated that Trooper Hoy never informed Carmenates that Carmenates was free to leave or to refuse consent to search his vehicle or personal effects or of his **Miranda**[13] rights. In addition, Trooper Hoy still had possession of Carmenates' license, registration,

---

[12] Trooper Hoy conceded that he did not ask Carmenates if Trooper Hoy could look inside or examine Carmenates' luggage or duffel bags or search Carmenates' vehicle or personal effects. N.T. at 84.

[13] **Miranda v. Arizona**, 384 U.S. 436 (1966).

and proof of insurance at the time Trooper Hoy requested to see Carmenates' luggage, including the black duffel bag.

Carmenates testified through a translator at the suppression hearing. He stated that he spoke just a few words of English. N.T. at 97. He also testified that he understood Trooper Hoy's request to see Carmenates' luggage as meaning that Trooper Hoy simply wanted to "see" it. *Id.* Carmenates also testified that Trooper Hoy pointed at the bags because Trooper Hoy "did not have a translator there." *Id.* at 97-98. He further testified that if Trooper Hoy pointed, Carmenates "would follow his orders" because he "didn't think that [he] had the option to say no, so I just followed what he told me to do." *Id.* at 98. Importantly, Carmenates testified that Trooper Hoy "wasn't talking to me and he didn't use" Google Translate; rather, he "kept pointing[.]" *Id.* at 99.

Following the hearing and after considering the parties' briefs, the suppression court granted Carmenates' Motion to Suppress, concluding that the Commonwealth had failed to establish that Carmenates voluntarily, knowingly, and intelligently consented to the search of his vehicle and luggage, finding, *inter alia*, that "a substantial language barrier existed between [Carmenates] and Trooper Hoy and [Carmenates] did not fully comprehend Trooper Hoy's request and/or statements." Opinion at 8, 15.

The Commonwealth timely appealed, and, on September 1, 2020, this Court published an Opinion reversing the suppression court's Order granting Carmenates' Motion to Suppress, finding that Carmenates knowingly,

intelligently, and voluntarily consented to Trooper Hoy's request to search. *See Commonwealth v. Carmenates*, No 1045 MDA 2019 (Pa. Super. filed Sept. 1, 2020). Carmenates subsequently filed an Application for Reargument *En Banc*. On November 9, 2020, we issued a *per curiam* Order granting reargument and withdrawing the panel's September 1, 2020 decision. Pursuant to this Order, the Commonwealth filed a substituted Brief, raising the following six issues:

1. Whether the suppression court committed an error of law/abuse of discretion in determining that [Carmenates'] consent to search his vehicle and its contents was not voluntary?

2. Whether the suppression court committed an error of law/abuse of discretion in concluding that [Carmenates] was the subject of an unconstitutional detention?

3. Whether the suppression court committed an error or law/abuse of discretion in failing to find that [Carmenates] waived various issues by failing to present them in his Omnibus Pretrial Motion?

4. Whether the suppression court committed an error of law/abuse of discretion in making factual findings outside the record of the suppression hearing?

5. Whether the suppression court committed an error of law/abuse of discretion in making factual findings contrary to the uncontroverted testimony of the Commonwealth's witness at the suppression hearing, PSP Trooper Hoy?

6. Whether the suppression court committed an error of law/abuse of discretion in failing to give due weight to the opinions and observations of Trooper Hoy based upon his knowledge, experience, and training in the field of narcotics investigations?

Commonwealth's Brief at 4-5.

**Standard of Review**

"When reviewing the grant of a suppression motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. McCleary*, 193 A.3d 387, 390 (Pa. Super. 2018) (citation omitted). "We may only consider evidence presented at the suppression hearing." *Id.* (citation omitted). "[B]ecause the defendant prevailed on this issue before the suppression court, we consider only the defendant's evidence and so much of the Commonwealth's evidence as remains uncontradicted when read in the context of the [suppression] record as a whole." *Id.* (citation omitted).

We are highly deferential to the suppression court's factual findings and credibility determination. *Commonwealth v. Batista*, 219 A.3d 1199, 1206 (Pa. Super. 2019). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted). If the record supports the suppression court's findings, we may not substitute our own findings. *Bastista*, 219 A.3d at 1206. However, we give no deference to the suppression court's legal conclusions and review them *de novo*. *Id.*

## I. Whether Consent was Knowing, Intelligent, and Voluntary

In its first and second issues, the Commonwealth asserts that the suppression court erred in concluding that Carmenates' consent was not

knowing, intelligent, and voluntary.[14]  Commonwealth's Brief at 20-23.  The Commonwealth claims that the suppression court incorrectly applied *Commonwealth v. Strickler*, 757 A.2d 884 (Pa. 2000), to conclude that the search violated Carmenates' rights.[15]  The Commonwealth, emphasizing the facts favorable only to its assertion that the search of Carmenates' luggage was consensual, argues that the court erred in placing significance on the fact that Trooper Hoy did not advise Carmenates of his *Miranda* rights or his right

---

[14] The Commonwealth purports that it combined its argument in support of issues one and two into one section.  Our review of the Commonwealth's Brief indicates, however, that the Commonwealth has, in fact, only presented argument in support of its first issue, *i.e.*, that it did not prove that Carmenates' consent was knowing, intelligent, and voluntary. We, therefore, conclude that the Commonwealth abandoned its second issue—that the suppression court erred in finding that Carmenates was the subject of an illegal detention.  Nevertheless, we observe that Carmenates raised as a basis to support suppression of the marijuana found in his vehicle that the traffic stop was illegal and the consent to search was proceeded by an unconstitutional detention.  The suppression court, however, declined to address this claim after finding that Carmenates' consent to search was not knowing, intelligent, or voluntary.  Accordingly, even if the Commonwealth had not abandoned this issue, it would fail as the suppression court did not make the legal conclusion challenged by the Commonwealth.

[15] The Commonwealth also asserts that the suppression court misapplied the holding in *United States v. Lopez*, 817 F. Supp. 2d 918 (S.D. Miss. 2011), which the Commonwealth characterizes as "factually distinguishable from the present matter to the extent that its application constitutes an error of law by the suppression court."  The Commonwealth does not, however, explain how the facts in *Lopez* are distinguishable from the instant facts.  Furthermore, we note that the suppression court conceded that *Lopez* is not binding on Pennsylvania courts, it did not rely exclusively on *Lopez* granting Carmenates' Motion to Suppress, and, our review of *Lopez*, belies the Commonwealth's claim that its facts are so dissimilar from the instant facts as to render the suppression court's reference to it legal error.  Accordingly, we find no merit to this claim.

to refuse to consent to the search.[16] *Id.* at 21. The Commonwealth avers that the encounter was cordial, and Trooper Hoy did not demand to see the contents of Carmenates' vehicle's rear compartment, but merely asked to see the luggage and Carmenates willingly opened the bag after Trooper Hoy pointed at it. *Id.* at 20, 22-23.

It is well-settled that a search conducted without a warrant is unreasonable and unconstitutional unless an established exception to the warrant requirement applies. *Strickler*, 757 A.2d at 888. "One such exception is consent[.]" *Id.*

"To establish a valid consensual search, the Commonwealth must first prove that the consent was given during a legal police interaction." *Commonwealth v. Bell*, 871 A.2d 267, 273 (Pa. Super. 2005). Next, the Commonwealth must prove the consent was given voluntarily. *Id.* "To be considered valid, the consent must be the product of an essentially free and unrestrained choice—not the result of duress or coercion, express or implied, or a will overbourne—under the totality of the circumstances." *Commonwealth v. Quiles*, 166 A.3d 387, 391 (Pa. Super. 2017) (citations and internal quotation marks omitted).

The Pennsylvania Supreme Court has also noted that because "both the tests for voluntariness [of consent] and for seizure centrally entail an

---

[16] The Commonwealth also repeats its averment that the suppression court exaggerated other factors, such as the cold weather and language barrier. *See* Commonwealth's Brief at 12.

examination of the objective circumstances surrounding the police/citizen encounter to determine whether there was a show of authority that would impact upon a reasonable citizen-subject's perspective, there is a substantial, necessary overlap in the analyses." ***Strickler***, 757 A.2d at 901-02.

Thus, to determine whether a consent is valid when provided close in time to a traffic stop, courts consider the following factors:

> 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) "the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, ... thus suggesting to a citizen that his movements may remain subject to police restraint,"; 9) the "presence of an express admonition to the effect that the citizen-subject is free to depart is a potent, objective factor;" and 10) whether the citizen has been informed that he is not required to consent to the search.

***Commonwealth v. Moyer***, 954 A.2d 659, 665 (Pa. Super. 2008) (*en banc*) (citations omitted).

"[K]nowledge of the right to refuse to consent to the search is a factor to be taken into account, [but] the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent." ***Strickler***, 757 A.2d at 901. Further, "the maturity, sophistication

and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account."[17] *Id.*

Here, the suppression court granted Carmenates' Motion to Suppress because it found that Carmenates' consent was "without any question" involuntary, observing that a "substantial language barrier" between Trooper Hoy and Carmenates prevented Carmenates from fully understanding Trooper Hoy's requests and statements.[18] Opinion at 8, 11, 15.

Following our review of the totality of the circumstances, we agree that Carmenates' consent was not knowing, intelligent, and voluntary. The record reflects that Carmenates spoke only a few words of English and that Trooper Hoy does not speak Spanish. Thus, throughout their encounter, Trooper Hoy and Carmenates used Google Translate to facilitate their conversation. Trooper Hoy conceded that Google Translate is "not 100 percent accurate at times" and the record evidence of some of the inaccurate and nonsensical translations provided by Google Translate supports this testimony.

---

[17] The Commonwealth did not present any evidence at the suppression hearing regarding Carmenates' maturity, sophistication, or mental or emotional state at the time Trooper Hoy obtained Carmenates' consent to search.

[18] In determining that the consent to search obtained by Trooper Hoy from Carmenates was invalid, the trial court also considered relevant that: (1) Trooper Hoy neglected to inform Carmenates that he could refuse to consent to the search or of his *Miranda* rights; (2) the traffic stop had been an extended stop; (3) Trooper Hoy exerted pressure on Carmenates by directing him to stand in the cold weather while Trooper Hoy remained in his own warm vehicle; and (4) Trooper Hoy directed Carmenates' actions. Opinion at 11, 15.

Moreover, and critically, despite Trooper Hoy's knowledge that the translations provided by Google Translate were not always accurate, he chose not to provide Carmenates with a copy of the Pennsylvania State Police Spanish-language consent to search form that he kept in his patrol vehicle and instead orally requested Carmenates' consent. To obtain Carmenates' consent, Trooper Hoy chose to use the less precise word "see" rather than a more precise term such as "search, "examine," or "look inside," thereby imbuing the request for consent with inherent, yet avoidable, ambiguity. Furthermore, Trooper Hoy acknowledged the substantial language barrier towards the end of the encounter by ceasing to communicate with Carmenates verbally, and, instead, merely pointing and gesturing at the items that Trooper Hoy wanted to search. Given these facts, the trial court reasonably concluded that there was a "substantial language barrier" between Carmenates and Trooper Hoy that precluded Carmenates from fully comprehending Trooper Hoy's questions and statements and from providing a valid consent to search.

In light of the foregoing, we conclude that Carmenates did not knowingly, intelligently, and voluntarily consent to the search of his vehicle and belongings. Accordingly, the suppression court properly suppressed the evidence seized pursuant to the search.

## II.   Waiver

In its third issue, the Commonwealth asserts that, in granting Carmenates' Motion to Suppress, the suppression court erroneously relied on grounds Carmenates had withdrawn from the court's consideration.

Commonwealth's Brief at 11. In particular, the Commonwealth claims that Carmenates waived consideration of the reliability of the Google Translate by withdrawing his "hearsay objection related to the admissibly [*sic*] of the Google Translate application."[19] ***Id.*** at 12 (quoting Carmenates' Memorandum in Support of Omnibus Pretrial Motion, 6/5/19, at Section II.E.). The Commonwealth asserts that, notwithstanding that Carmenates withdrew his objection, Google Translate's reliability "improperly colored" the suppression court's decision. ***Id.*** The Commonwealth avers that the suppression court should have restricted its analysis to the two issues on which Carmenates focused his Motion: (1) whether his initial stop was legal; and (2) whether his consent to search his vehicle was knowing, intelligent, and voluntary. ***Id.*** at 13.

Prior to trial, a defendant may file a motion "to suppress any evidence alleged to have been obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(A); ***see Commonwealth v. Long***, 753 A.2d 272, 279 (Pa. Super. 2000). "The motion shall state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D). "[F]ailure to comply with the specificity requirement of Rule 581(D) will result in waiver, as those requirements have been held to be mandatory." ***Commonwealth v. Dixon***, 997 A.2d 368, 376 (Pa. Super. 2010).

---

[19] Carmenates had initially objected to "the admissibility of anything that Google Translate indicated was said by [him.]" Opinion at 4.

The requirement that a defendant raise the grounds for suppression in his motion ensures that the Commonwealth is on notice of what evidence it must produce at the suppression hearing to satisfy its burden of proving that the police obtained the evidence legally. ***Commonwealth v. Carper***, 172 A.3d 613, 619 (Pa. Super. 2017).

Our review indicates that, contrary to the Commonwealth's claims, Carmenates' motion specifically and sufficiently put the Commonwealth on notice that Carmenates intended to argue that the traffic stop was illegal and that his consent to the search was not knowing, intelligent, and voluntary, at least in part as a result of Google Translate's inaccuracy. In addition, the Notes of Testimony from Carmenates' suppression hearing confirm that the Commonwealth understood Carmenates' issues as it knew to present evidence to the contrary.

Moreover, although Carmenates' stated in his Memorandum in Support of Ominibus Pre-Trial Motion that he withdrew his objection to the admissibility of the Google Translate application on hearsay grounds, he also reiterated that the court should consider Google Translate's lack of reliability in the context of the coercive nature of the interaction between Trooper Hoy and Carmenates and when determining whether the Commonwealth had proven that Carmenates' consent to search was legally obtained. We, thus, disagree with the Commonwealth that Carmenates waived all consideration, for any reason, of Google Translate's reliability by the suppression court.

Furthermore, the Commonwealth's assertion that the suppression court improperly considered testimony concerning the reliability of Google Translate after Carmenates withdrew his objection to its admissibility on hearsay grounds conflates the concept of admissibility of evidence with weight of the evidence. Here, after the Commonwealth elicited testimony from Trooper Hoy that he had no problem understanding Carmenates' responses to his questions as translated by Google Translate and that Carmenates never indicated that he did not understand a question translated by Google Translate, Trooper Hoy conceded on cross-examination, without objection, that Google Translate "is not 100 percent accurate at times." *Id.* at 36-37, 79. The court weighed this testimony along with the other evidence of the translations and found that "the translation offered by Google Translate was not clear or precise, and [was] sometimes inaccurate." Opinion at 4 ¶ 14. The record supports this conclusion. Thus, there is no merit to the Commonwealth's claim that the court erred in considering the reliability of Google Translate because Appellant had withdrawn his objection to the admissibility of the evidence.

### III. Suppression Court's Findings of Fact and Credibility Determinations

In its fourth and fifth issues, the Commonwealth asserts that the suppression court erred in making findings of fact that contradicted Trooper Hoy's testimony. Commonwealth's Brief at 14-17. Specifically, the Commonwealth complains that the court erred in "mak[ing] extensive reference to[,]" and "sensationalizing the severity of[,] the temperature" on

December 12, 2018, to "fit its narrative." *Id.* at 14-15. The Commonwealth also avers the court erred in concluding that there was a substantial language barrier between Trooper Hoy and Carmenates when Trooper Hoy's testimony indicated that neither man had trouble understanding the other and Carmenates offered only limited testimony about their ability to communicate. *Id.* at 15-17.

We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony. *Commonwealth v. Whitlock*, 69 A.3d 635, 637 (Pa. Super. 2013). We may not substitute our own findings where the records supports those made by the suppression court. *Batista*, 219 A.3d at 1206.

Following our review, we conclude that the record supports the suppression court's findings of fact. With respect to the suppression court's findings pertaining to the weather, our review of the record confirms that this traffic stop took place in northern Pennsylvania in December, Trooper Hoy was using the heat in his patrol vehicle to stay warm, and he directed the vehicle's vents to the outside to provide some heat for Carmenates. That the vehicle's heater was on at all confirms that it was a cold day. Further, the record supports the court's finding that a language barrier existed. It is undisputed that Carmenates did not speak English and Trooper Hoy did not speak Spanish. The two men communicated through Google Translate, which even Trooper Hoy conceded was not 100 percent accurate. In addition, it is

undisputed that at the end of the encounter, Trooper Hoy used hand motions, rather than words, to direct Carmenates' actions.

In its final issue, the Commonwealth complains that the court failed to give any weight to Trooper Hoy's uncontroverted opinions and observations that Carmenates' apparently legal actions were, in fact, indicia of criminal behavior and that it was upon those factors that Trooper Hoy based his reasonable suspicion that Carmenates was involved in criminal activity. Commonwealth's Brief at 17-19. The Commonwealth specifically notes that the court rejected Trooper Hoy's opinion that religious materials are an indication of criminal activity. *Id.* at 18. The Commonwealth observes that Carmenates did not offer an expert to refute Trooper Hoy's expert opinion. *Id.* at 19.

As noted above, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Elmobdy*, 823 A.2d at 183 (citations omitted). We cannot and will not reweigh the evidence or substitute our credibility determinations for those of the suppression court.

We disagree that the suppression court was required to find that reasonable suspicion existed merely because Trooper Hoy testified that he believed it did. *Commonwealth v. Holmes*, 14 A.3d 89, 96 (Pa. 2011) (determination of whether officer had reasonable suspicion is an objective determination and "[i]t is the duty of the suppression court to independently

- 19 -

evaluate whether, under the particular facts of a case, an objectively reasonable officer would have reasonably suspected criminal activity was afoot"); ***Commonwealth v. Walton***, 63 A.3d 253, 256 (Pa. Super. 2013) (noting the suppression court determined the credibility of witnesses and the weight to be given to their testimony and finding officer lacked reasonable suspicion to conduct investigatory stop). Further, the suppression court did not determine whether reasonable suspicion existed. Rather, it suppressed the evidence because it concluded Carmenates did not knowingly, voluntarily, and intelligently consent to the search. This claim, therefore, fails.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/14/2021