J-A06032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MANNAR ABDULHADI KADHIM | : | |
| | : | |
| Appellant | : | No. 522 WDA 2022 |

Appeal from the Judgment of Sentence Entered March 28, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001101-2021

BEFORE: OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED: March 16, 2023**

Mannar Abdulhadi Kadhim (Kadhim) appeals from the judgment of sentence imposed in the Court of Common Pleas of Allegheny County (trial court) following his bench conviction of receiving stolen property (RSP) and firearms not to be carried without a license.[1] Kadhim challenges the trial court's denial of his motion to suppress evidence of the firearm recovered from his person. We affirm.

**I.**

This case stems from a December 2020 incident during which Kadhim reported his vehicle stolen to Police Officer William Kelly of the McKees Rocks

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3925(a) and 6106(a)(1).

Police Department at a gas station. Kadhim was homeless and living out of his car at that time. After Kadhim requested a courtesy transport to his girlfriend's workplace, a pat-down of his person for officer safety led to recovery of a stolen firearm from his waistband. Kadhim moved to suppress evidence of the firearm before trial by contesting the validity of the search.

**A.**

Officer Kelly was the sole witness at the October 4, 2021 suppression hearing. He testified that on December 15, 2020, at about 10:45 p.m., Kadhim approached him at a Speedway while he was fueling his police vehicle. Kadhim reported that his car had been stolen and Officer Kelly took the report, along with Police Officer Dimichele.[2] Kadhim asked the officers if he could call his girlfriend and Officer Dimichele gave Kadhim his cell phone to place the call. Kadhim "then requested a courtesy transport to . . . where his girlfriend was working," and the officers agreed to transport him. (N.T. Suppression, 10/04/21, at 7). Officer Kelly testified that when Kadhim asked for transportation, he responded, "Yeah, we'll give you a ride down there, but I'm going to check you for weapons before you get in the back of the patrol car, and I asked him if he had any weapons." (*Id.*). Officer Kelly explained that he advised Kadhim of this "for officer safety and for his safety" and that "every time someone gets in my patrol vehicle, I pat them down." (*Id.* at 7-8).

---

[2] Officer Dimichele's first name is not apparent from the record.

Although this procedure is not a written police department policy, it is a routine practice to protect officer safety.

When Officer Kelly asked Kadhim if he had any weapons, Kadhim "stated that he did not have a firearm and put his hands up." (*Id.* at 8). The officer proceeded to pat him down. Officer Kelly testified to his belief that Kadhim "was consenting to a search or pat-down" when he put his hands up, that Kadhim never told him "No" or indicate that he no longer wanted a ride. (*Id.* at 9). Officer Kelly recounted that during the pat-down, "upon feeling his waistband, I felt the distinct shape of a firearm." (*Id.*). The officers placed Kadhim's hands behind his back and handcuffed him.

On cross-examination, Officer Kelly acknowledged that during his interaction with Kadhim before the pat-down, he observed no bulge in his waistband, furtive movements or any other indication that he was carrying a weapon. Officer Kelly testified that "there was nothing to indicate prior to [the pat down that he] was armed or dangerous." (*Id.* at 16). Officer Kelly also advised that if Kadhim had refused the pat-down, he was free to leave or walk to his girlfriend's workplace. The trial court took the matter under advisement and entered an order denying the suppression motion on October 13, 2021.

**B.**

Kadhim waived his right to a jury trial and proceeded to a stipulated bench trial on March 28, 2022. The parties stipulated to the facts outlined in the Affidavit of Probable Cause, which reflected that after Officer Kelly found

the firearm, Kadhim uttered, "I stole the gun." (Affidavit of Probable Cause, 12/16/20, at 2). Officer Kelly cleared the gun which was loaded with one round in the chamber and six rounds in the magazine. After Kadhim was given **Miranda**[3] warnings at the police station, he admitted that he "took the firearm from a bag [at a female friend's home] when she wasn't looking." (**Id.**). A county records check of the serial number on the gun showed that it was owned by Yolanda Gonzalez. Ms. Gonzalez was in a relationship with Kadhim at the time, and she relayed to police that she did not know that the firearm was missing; she thought the gun was in her closet where she stored it and she did not give Kadhim permission to take it.

The trial court found Kadhim guilty of RSP and the firearms offense and sentenced him to an aggregate term of one year of probation. Kadhim timely appealed and he and the trial court complied with Rule 1925. **See** Pa.R.A.P. 1925(a)-(b).

## II.

On appeal, Kadhim challenges the trial court's denial of his pre-trial motion to suppress. He claims the warrantless search of his person was illegal and that evidence of the firearm recovered from his waistband should have been suppressed.[4] (**See** Kadhim's Brief, at 7, 15-24). According to Kadhim,

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[4] When reviewing an order denying a motion to suppress evidence,

- 4 -

the Commonwealth failed to establish any exception to the warrant requirement, including express or implied consent, and that "it is impossible to reasonably find that Kadhim impliedly consented" to the pat-down. (*Id.* at 23).[5]

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures." *Luczki*, *supra* at 542 (citation omitted). "It is well-settled that a search conducted without a warrant is unreasonable and unconstitutional unless an established exception to the

---

[w]e may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law. It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

*Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa. Super. 2019) (citations omitted).

[5] We agree with Kadhim and the trial court that the holding of *Terry vs. Ohio*, 392 U.S. 1 (1968), does not apply to the circumstances of this case, as Officer Kelly did not conduct a *Terry* stop, which would have required a showing of reasonable suspicion that Kadhim was involved in criminal activity. (*See* Kadhim's Brief, at 18; Trial Court Opinion, 6/15/22, at 6); *see also Terry*, *supra* at 30.

warrant requirement applies." ***Commonwealth v. Carmenates***, 266 A.3d 1117, 1124 (Pa. Super. 2021) (*en banc*) (citation omitted).

One such exception to the warrant requirement is consent. ***See id.*** To establish a valid consensual search, the Commonwealth must demonstrate that the consent was given during a legal police interaction and that the consent was given voluntarily. ***See id.*** "To be considered valid, the consent must be the product of an essentially free and unrestrained choice—not the result of duress or coercion, express or implied, or a will overbourne—under the totality of the circumstances." ***Id.*** (citation omitted). Additionally, consent may be express or implied. ***See Commonwealth v. Fredrick***, 230 A.3d 1263, 1267 (Pa. Super. 2020). The standard for measuring the scope of an individual's consent is one of "objective reasonableness," considering what "a reasonable person would have understood by the exchange between the officer and the person who gave the consent." ***Id.*** (citation omitted).

The record in this case reflects that Kadhim initiated contact with Officer Kelly by approaching him to report that his car had been stolen. At that time, Kadhim was a victim of theft, and Officer Kelly had no reason to suspect that he was involved in any criminal activity. Kadhim then prolonged the interaction by asking to borrow a cell phone to call his girlfriend and requesting a courtesy transport to her workplace. Officer Kelly was amenable to assisting Kadhim but advised him of the need to submit to a weapons search before entering his police vehicle in accordance with his routine practice for courtsey

- 6 -

transport. Officer Kelly explained that he took this measure for safety purposes to prevent any person who may be armed from entering his vehicle, that Kadhim was under no obligation to get into the vehicle, and that he was free to secure other transportation or walk away from the scene. When Officer Kelly informed Kadhim of the need for a pat-down, Kadhim did not in any way object. Instead, Kadhim told Officer Kelly that he was not armed and, unprompted, raised his arms in the air.

Given the foregoing, based on the totality of the circumstances, we conclude that Officer Kelly reasonably interpreted Kadhim's gestures as consent to the search of his person, and that the warrantless search was constitutionally permissible. There is nothing in the record to indicate that Kadhim's implied consent to the pat-down was the result of anything other than his free will. Because Kadhim impliedly and voluntarily consented to the search of his person, the gun seized from his waistband was admissible at trial. Accordingly, the trial court did not err in denying Kadhim's pre-trial motion to suppress.[6]

_____

[6] Kadhim's reliance on **Commonwealth v. Davenport**, 308 A.2d 85 (Pa. 1973), which involved an appeal from an order denying suppression of a blood draw taken from an incarcerated defendant faced with first-degree murder charges, is misplaced. (**See** Kadhim's Brief, at 19-23). In **Davenport**, the county coroner extracted a blood sample from Davenport at the "instigation" of police, to compare with that of the deceased without judicial authorization. Our Supreme Court concluded that Davenport's rights under the Fourth Amendment were violated and that his motion to suppress should have been granted. Although the Commonwealth contended that Davenport consented

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/16/2023

---

to the blood draw by holding out his arm and not voicing an objection, the Court found this argument lacked merit where Davenport was not advised of the reasons for the blood draw or who had authorized it.  The Court determined that Davenport's action "constituted mere acquiescence, and not a knowing and intelligent waiver of his Fourth Amendment rights." **Davenport**, **supra** at 88.

In stark contrast, Kadhim was not incarcerated nor was he under investigation for any crime when the search at issue occurred.  Instead, he was the victim of car theft who affirmatively sought police assistance with transportation, and the pat-down was merely a condition of the courtesy ride and a routine safety measure conducted to prevent armed individuals from entering patrol vehicles.