J-A29008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE AJIATAS | : | |
| | : | |
| Appellant | : | No. 1411 WDA 2022 |

Appeal from the Judgment of Sentence Entered November 22, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002830-2021

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                **FILED: FEBRUARY 13, 2024**

Jose Ajiatas appeals from the aggregate judgment of sentence of six to twelve years of imprisonment followed by five years of probation for his conviction for, *inter alia*, rape of a child. We affirm.

The trial court set forth the pertinent facts:

On November 30, 2020, Detective Brian Sellers of the City of Pittsburgh Police Department's Special Victims Unit received a ChildLine report concerning an eleven-year-old female, L.C. The report initiated by L.C.'s primary care physician indicated that the minor was [twenty-one] weeks pregnant. A procedure to terminate the pregnancy was scheduled on December 2, 2020, and in anticipation of this event, Detective Sellers sought and obtained a search warrant for the "genetic material (DNA) from fetal tissue retrieved from an eleven-year old female, [L.C.] from UPMC Magee Women's Hospital."

L.C. initially claimed that the father of the unborn child was a male minor between the age of ten and eleven years old. As indicated in the accompanying Affidavit of Probable Cause for the search warrant, Dr. Jennifer Clarke, a pediatrician at UPMC Children's Hospital, informed [Detective Sellers] that it was "highly unlikely"

that an eleven-year-old male could produce fertile sperm that would result in pregnancy. Additionally, he learned from L.C.'s brother or sister that she had been attending school remotely and that they were unaware of her being involved with a boy of similar age. As L.C. is below the legal age of consent, and with the possibility of a sexual criminal act, Detective Sellers sought a sample of the fetal tissue from the termination procedure with the intent to determine paternity through DNA comparison. On December 2, 2020, Detective Sellers executed the warrant and obtained the fetal tissue sample.

As part of his investigation, forensic and other interviews were conducted. On December 24, 2020, Detective Sellers had a telephone conversation with L.C.'s brother, B.A. Detective Sellers explained to B.A., and his father, [Appellant], that as part of his investigation into L.C.'s pregnancy, he would like both of them to come to police headquarters to provide a DNA sample. After Detective Sellers became aware that [Appellant] spoke little to no English, he asked if B.A., who was [seventeen] years old, would be willing to interpret for [Appellant]. He agreed, and around 4:00 p.m. that same day, [Appellant] and B.A. arrived voluntarily at the police station. Detective Sellers communicated to [Appellant] that he was not a suspect, and at no time was [Appellant] handcuffed or told that he was not free to leave. Detective Sellers brought B.A. and [Appellant] into a room to obtain the DNA sample. The door remained closed and unlocked, and no other law enforcement officers were present.

It was established during the suppression hearing that the Pittsburgh Police Department employs Spanish-speaking interpreters, but they are not on-call [twenty-four] hours a day and Detective Sellers did not call one to assist in translation on this day. Moreover, [Detective] Sellers testified that he is unaware of, and has never seen, a departmental Consent to Search form written in Spanish. The English-language Consent to Search form was provided to B.A. and it was also read aloud by Detective Sellers and translated simultaneously to [Appellant]. The form read as follows: "(1) That I may require a search warrant to be obtained prior to any search being made; (2) That I may refuse to consent to any search; (3) That anything which may be found as a result of this search which is subject to search and seizure can and will be used against me in a criminal prosecution; (4) That I may revoke my consent to search at any time; and (5)

That I may consult with anyone of my choosing before I make a decision to waive my rights in consenting to this search."

Upon translation of these five statements by B.A. to [Appellant], Detective Sellers described that [Appellant] responded with a head shake or head nod, but was unsure if he responded verbally with "yes" or "si." Thereafter, it was signed by [Appellant] on December 24, 2020 at 4:23 PM. Detective Sellers observed during the translation by B.A. that [Appellant] appeared friendly, observant, and responded in a positive manner. After [Appellant] consented to providing a sample, Detective Sellers explained the collection process. He informed [Appellant], through B.A., that he will need to open his mouth, whereafter the inside of both cheeks will be swabbed three times before placing the swab in a transport pouch. [Appellant] complied without any issue.

Detective Sellers testified that the entire interaction with [Appellant] was no more than [ten] to [fifteen] minutes long, and B.A. never communicated any questions from [Appellant] to Detective Sellers.

[Appellant] also testified at the evidentiary hearing [with the aid of an interpreter]. [Appellant] stated that he knows very little English. He explained that he went to the police station with his son, B.A., and it was explained to him after he arrived that the police wanted a DNA sample. . . . Appellant testified that he had "no choice" other than to sign the consent form because the detective was present. Furthermore, he stated that he did not understand that by signing the form police could obtain a DNA sample.

Findings of Fact and Conclusions of Law, 6/23/22, at 3-6 (cleaned up).

Appellant was charged with multiple criminal offenses, including rape of a child. He subsequently filed a motion to suppress based upon the voluntariness of his consent, and the trial court held a hearing on this issue. The court denied the motion, holding that Appellant's consent to the search was given knowingly, intelligently, and voluntarily. The parties proceeded to a stipulated bench trial. Appellant was convicted of rape of a child and other

related offenses and was later sentenced as indicated above. This timely appeal followed. The trial court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied. Thereafter, the court issued a Rule 1925(a) opinion.

Appellant proffers the following question for our review: "Whether the trial court erred in denying [Appellant's] motion to suppress where his consent to the DNA swab was not knowingly, intelligently, and voluntarily given to the detective?" Appellant's brief at 8.

We begin with a review of the germane legal principles. Preliminarily,

> [a]n appellate court's standard of reviewing the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Thus, our review of questions of law is *de novo*. Our scope of review is to consider [the evidence offered by the Commonwealth] only and the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole.

*Commonwealth v. Shaffer*, 209 A.3d 957, 968-69 (Pa. 2019) (citations omitted). When a motion to suppress has been filed, the Commonwealth has the burden of proving by a preponderance of the evidence that the challenged evidence was not unlawfully obtained. *See Commonwealth v. Wallace*, 42 A.3d 1040, 1047-48 (Pa. 2012).

Where the voluntariness of consent to search is at issue, the following tenets guide our review:

> A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies. One such exception is consent,

voluntarily given. The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent. Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus.

***Commonwealth v. Strickler***, 757 A.2d 884, 888–89 (Pa. 2000) (citations and footnotes omitted). The voluntariness standard for consent is less stringent than the tests governing waiver of other constitutional rights. ***Id***. at 889 n.3 ("[W]hile the waiver analysis appropriately applies to safeguard constitutional guarantees involving the preservation of a fair trial of criminal defendants, it does not pertain to the wholly different protections of the Fourth Amendment[.]" (citations omitted)). The test is objective in nature, with some subjective considerations. ***Id***. at 901 ("Additionally, although the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account." (citations omitted)).

Appellant concedes that his encounter with the detective was lawful and, therefore, challenges only the voluntariness of the consent given to conduct the DNA swab. ***See*** Appellant's brief at 22. In so doing, he avers that the Commonwealth did not prove that B.A. translated everything that Detective Sellers said to Appellant fully and accurately, as a certified interpreter was not utilized in obtaining Appellant's consent. ***Id***. at 31. Thus, Appellant contends that, because of the language barrier, he did not fully comprehend the consent to search form, and therefore any consent was improperly obtained. ***Id.***

Appellant analogizes his case to **Commonwealth v. Carmenates**, 266 A.3d 1117 (Pa.Super. 2021) (*en banc*). Therein, Carmenates's vehicle was pulled over for a traffic stop. Carmenates, whose first language was Spanish, spoke little English, while the trooper could not speak any Spanish. To communicate with Carmenates, the trooper used the Google Translate application on his cell phone. However, it was adduced at the suppression hearing that the translation from Google Translate was sometimes inaccurate. Furthermore, the suppression court found that the trooper deliberately used vague and imprecise words to confuse Carmenates in order to obtain his consent to search the vehicle and items in it. The trooper additionally had a Spanish-language consent to search form in his vehicle but neglected to use it. Hence, the court determined that Carmenates's consent to search the vehicle was not given knowingly, intelligently, and voluntarily, and this Court affirmed.

Appellant avers that the substantial language barrier he faced is analogous to that in **Carmenates** and, thus, argues that the consent obtained by Detective Sellers was similarly invalid. **See** Appellant's brief at 31. However, the trial court rejected this claim, finding that **Carmenates** was distinguishable. **See** Findings of Fact and Conclusions of Law, 6/23/22, at 11-12. Unlike in **Carmenates**, B.A.'s translation in the matter *sub judice* was never proven to be an inaccurate representation of Detective Sellers's questions. Moreover, whereas the trooper in **Carmenates** had a prepared consent form in Spanish in his vehicle but chose not to use it, such was not

the case herein. There was no evidence presented that Detective Sellers attempted to trick Appellant into providing his consent or failed to act in good faith. Instead, he asked Appellant's son, B.A., to translate what was written on the form. Based on these distinctions, we agree with the court that Appellant's reliance on **Carmenates** is inapt.

The trial court concluded that the Commonwealth proved by a preponderance of the evidence that Appellant's consent was voluntary and not obtained in violation of his rights. **See** Findings of Fact and Conclusions of Law, 6/23/22, at 13. It noted that Appellant's body language indicated that he understood what B.A. was saying as he nodded and gave positive verbal affirmations while listening to B.A.'s translation of Detective Sellers's statements. **Id**. at 5, 13. Furthermore, Appellant was cooperative while B.A. translated the form and Detective Sellers took the DNA sample. **Id**. at 5-6. Indeed, while undergoing the DNA swab, Appellant acted in accordance with what the detective instructed him to do, demonstrating that it was an accurate translation. **Id**. at 13. The court also decided that the use of B.A., a family member, to translate was not unreasonable in these circumstances. **Id**. at. 12-13. Thus, the trial court found that Appellant understood what was being asked of him, including his right to refuse consent. **Id**.

On review, we determine that the certified record confirms the trial court's findings that suppression was not warranted under the circumstances of this case. Appellant acknowledged that he went to the police station to provide a DNA swab and that he had signed the consent form to that extent.

*Id*. at 31-32.  When asked through an interpreter whether he was aware that Detective Sellers wanted his DNA, Appellant responded, "when I got there, I found out."  *Id*. at 31.  This belied Appellant's contention that he did not comprehend the translation given by B.A., since Appellant conceded that he understood the detective wished to collect a DNA sample.  Moreover, according to Detective Sellers's testimony, Appellant was cooperative throughout the entire interaction.  *See* N.T. Suppression Hearing, 4/5/21, at 10.  When the detective explained to Appellant the process of conducting a DNA swab, he encountered no inquiries or resistance from Appellant.  *Id.* at 12-13.  Appellant was compliant and never questioned or tried to stop the proceeding in any way, instead nodding and expressing affirmance as B.A. translated.  *Id.* at 10-11.  Finally, Detective Sellers also testified that he frequently used bilingual family members such as B.A. to translate, as he found that people are often more comfortable around individuals with whom they are well-acquainted.  *Id*. at 26-27.

As the court's factual findings that Appellant knowingly, intelligently, and voluntarily consented to the swab are supported by the record, the trial court did not err in denying Appellant's motion to suppress.  Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 2/13/2024