J-S10019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JIT B. GHIMIREY | : | |
| | : | |
| Appellant | : | No. 494 WDA 2023 |

Appeal from the Judgment of Sentence Entered March 29, 2023
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002345-2022

BEFORE: OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.: **FILED: JULY 5, 2024**

Appellant, Jit B. Ghimirey, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his bench trial convictions for two counts of driving under the influence of alcohol ("DUI") and various summary traffic offenses.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On September 16, 2021, Brentwood Borough Police Sergeant William Meisel was on routine patrol near the intersection of Route 51 and Marylea Avenue. At approximately 2:08 a.m., Sergeant Meisel observed Appellant driving in an erratic manner. Sergeant Meisel followed Appellant's vehicle and saw it stop at green lights and cross over the double yellow centerlines of Route 51. (***See***

---

[1] 75 Pa.C.S.A. § 3802(a)(1), (c).

N.T. Suppression/Trial/Sentencing Hearing, 3/29/23, at 7-8). Ultimately, Sergeant Meisel activated his lights to effectuate a traffic stop, but Appellant continued driving. Sergeant Meisel then activated his sirens and pulled beside Appellant's vehicle. Appellant pulled into a parking lot approximately thirty (30) to forty-five (45) seconds after Sergeant Meisel activated his lights.

Sergeant Meisel approached the driver's side and observed Appellant in the driver's seat and another male in the front passenger's seat. Appellant appeared lethargic and had glassy, bloodshot eyes. Sergeant Meisel asked Appellant to exit the vehicle, and he complied. Sergeant Meisel immediately noticed that Appellant was unsteady on his feet. Additionally, Sergeant Meisel smelled alcohol emanating from Appellant. While conversing with Sergeant Meisel, Appellant "spoke broken English."[2] (*Id.* at 12). This prompted Sergeant Meisel to ask the passenger to interpret if Appellant needed assistance, and the passenger agreed. Sergeant Meisel also asked Appellant if he understood English well enough to continue. Sergeant Meisel instructed Appellant "that if at any point you don't understand what I'm saying to you, stop me and we'll proceed from there." (*Id.*) Appellant "never relayed to [Sergeant Meisel] that he did not understand the proceedings of what was

_____

[2] Appellant is an immigrant from Bhutan, by way of Nepal. (N.T. Suppression/Trial/Sentencing Hearing at 54). During the suppression hearing, defense counsel noted, "The City of Pittsburgh and Allegheny County knows there's a large refugee population, specifically Nepali-speaking refugee population that live[s] along the Route 51 corridor where this crime occurred." (*Id.* at 34).

going on." (*Id.* at 13).

Sergeant Meisel then commenced field sobriety tests. Sergeant Meisel demonstrated each of the tests to Appellant, and he asked Appellant if he understood how to perform each test. Appellant confirmed his understanding. Nevertheless, Appellant failed each test. Sergeant Meisel then "explained to [Appellant] that at that point I was going to investigate him for driving under the influence," and the sergeant transported Appellant to a local hospital for a blood draw. (*Id.* at 19).

At the hospital, Sergeant Meisel read PennDOT's DL-26 implied consent form to Appellant in English.[3] Appellant did not indicate any confusion about the warnings on the form. (*See id.* at 21). Appellant also signed the DL-26 form to acknowledge receiving the warnings. Additionally, the hospital provided its own consent form, which Appellant signed. After Appellant executed these forms, Sergeant Meisel watched the nurse ask Appellant for oral consent before she conducted the blood draw. Appellant responded to the nurse by providing consent while speaking English. (*Id.* at 22). Thereafter, Sergeant Meisel observed Appellant "communicating" with

---

[3] "Form DL–26 gives an arrestee an easily understandable warning that if he refuses a chemical test and is convicted of DUI, he will be subject to severe penalties because of his refusal." *Pennsylvania Dept. of Transp., Bureau of Driver Licensing v. Weaver*, 590 Pa. 188, 196-97, 912 A.2d 259, 264 (2006).

hospital staff "and answer[ing] their questions."[4]  (*Id.* at 23).  Subsequent

blood testing revealed that Appellant's BAC was .218%.

On May 6, 2022, the Commonwealth filed a criminal information

charging Appellant with DUI and other Motor Vehicle Code violations.

Appellant filed an omnibus pretrial motion on March 10, 2023, which included

a motion to suppress the evidence recovered by Sergeant Meisel.  On March

29, 2023, the court conducted a suppression hearing, and Sergeant Meisel

was the only witness to testify.  At the conclusion of the hearing, the court

denied Appellant's suppression motion.  Appellant immediately proceeded to

a stipulated bench trial, and the court convicted him of the aforementioned

offenses.  That same day, the court sentenced Appellant to an aggregate term

of eighteen (18) months of probation with restrictive conditions, including

electronic home monitoring for ninety (90) days.

On April 28, 2023, Appellant timely filed a notice of appeal.  The court

ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors

complained of on appeal on May 31, 2023.  On June 14, 2023, Appellant timely

filed his Rule 1925(b) statement.

Appellant now raises one issue on appeal:

---

[4] Sergeant Meisel also testified that the hospital had posters in the waiting and treatment rooms to inform patients that interpreters were available if they did not speak English.  While the sergeant indicated that the posters were "in multiple languages," he did not expressly say whether Nepali was one of the languages.  (*Id.* at 23).

> Whether the trial court erred by denying [Appellant's] motion to suppress his BAC results where his minimal knowledge of English created such a substantial language barrier that it prevented him from providing valid consent to the blood draw?

(Appellant's Brief at 5).

On appeal, Appellant complains that all communications with Sergeant Meisel occurred in English, which is not Appellant's native language. Appellant contends that Sergeant Meisel was aware that Appellant struggled with English. Appellant asserts that this language barrier, combined with the stressful circumstance of being arrested, weighed against a finding of voluntary consent to the blood draw. To support this assertion, Appellant relies on *Commonwealth v. Carmenates*, 266 A.3d 1117 (Pa.Super. 2021) (*en* banc), for the proposition that a substantial language barrier can render consent invalid.

Appellant concedes that he cooperated with the sergeant's commands during the field sobriety tests, he communicated with hospital staff during the blood draw, and he proceeded without a translator. Appellant insists, however, that these facts do not "mean [he] did not suffer a substantial language barrier and/or that his subsequent consent was valid." (Appellant's Brief at 23). Appellant reiterates that "the Commonwealth must prove that the defendant's consent was voluntary; the defendant does not have to prove that his consent was involuntary." (*Id.*) Under the circumstances of this case, Appellant concludes that the sergeant did not obtain Appellant's voluntary

consent to the blood draw, and the court should have granted his suppression motion. We disagree.

The following principles govern our review of an order denying a suppression motion:

> [O]ur initial task is to determine whether the [trial court's] factual findings are supported by the record. In making this determination, we must consider only the evidence of the prosecution's witnesses, and so much evidence of the defense that remains uncontradicted when fairly read in the context of the record as a whole. When the evidence supports the factual findings, we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Bryant*, 620 Pa. 218, 232, 67 A.3d 716, 724 (2013) (quoting *Commonwealth v. Perez*, 577 Pa. 360, 374-75, 845 A.2d 779, 788 (2004)).

"The United States Supreme Court has held that because 'the taking of a blood sample' is a search within the meaning of the Fourth Amendment to the United States Constitution, police officers may not compel the taking of a blood sample without a search warrant, absent an applicable exception." *Commonwealth v. Haines*, 168 A.3d 231, 234 (Pa.Super. 2017) (quoting *Birchfield v. North Dakota*, 579 U.S. 438, 455, 136 S.Ct. 2160, 2173, 195 L.E.d2d 560 (2016) (footnote omitted)). "One such exception is consent, voluntarily given." *Commonwealth v. Strickler*, 563 Pa. 47, 56, 757 A.2d 884, 888 (2000). *See also Commonwealth v. Myers*, 640 Pa. 653, 681, 164 A.3d 1162, 1178 (2017) (plurality) (explaining that *Birchfield's* holding

"supports the conclusion that … an individual must give actual, voluntary consent at the time that testing is requested").

"[A] trial court must consider the totality of the circumstances when determining if a defendant's consent to a blood draw was voluntary." ***Commonwealth v. Miller***, 186 A.3d 448, 451 (Pa.Super. 2018), *appeal denied*, 650 Pa. 247, 199 A.3d 858 (2018).

> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

***Id.*** (internal citation omitted).

"[K]nowledge of the right to refuse to consent to the search is a factor to be taken into account, [but] the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent." ***Carmenates, supra*** at 1125 (quoting ***Strickler, supra*** at 79, 757 A.2d at 901). "Further, the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account." ***Id.*** (internal citation, footnote, and quotation marks omitted).

Instantly, the suppression court evaluated Appellant's arguments and determined that Appellant voluntarily consented to the blood draw:

Here, we find [Appellant] exercised an understanding of English in this instance and that he was able to follow the directions of the [sergeant] from the time he was pulled over through his signing of the DL26 … consent form authorizing the blood draw. We find the [sergeant's] testimony credible and fair. These matters are uncontroverted by [Appellant]. We find [Sergeant] Meisel inquired repeatedly as to whether [Appellant] understood and/or wished to have an interpreter. We find that while the Passenger may not have been a professional interpreter, he stated that he was able and offered to translate between the [sergeant] and [Appellant] but the need never arose. We find that [Appellant] did follow instructions and requests as though he understood what was being said and asked of him.

\* \* \*

Additionally, we find that the hospital setting was an additional opportunity where guides are in place to make certain that persons understand what is being asked of them. [Appellant] never once indicated that he had a problem understanding although he was asked if he understood through each question on the form. [Appellant] stated that he understood and his behavior gave the appearance that he understood and he signed. [Appellant] never once asked for assistance nor indicated that he did not understand or that he needed or wanted assistance which was offered.

(Trial Court Opinion, filed 8/4/23, at 6-7) (unnumbered). Our review of the record supports the court's analysis.

Throughout the suppression hearing, Sergeant Meisel testified that Appellant understood the sergeant's verbal directives. The sergeant also explained that Appellant understood the implied consent warnings once they arrived at the hospital. Significantly, the fact that English is not Appellant's first language does not automatically create the "substantial language barrier"

that this Court has seen in other cases involving these types of interactions between police and the citizenry. **Compare Carmenates, supra** (holding court did not err in granting defendant's suppression motion where consent was involuntary due to "substantial language barrier" between trooper and defendant; trooper needed to use Google Translate to facilitate conversation with defendant; despite trooper's knowledge that Google Translate was not always accurate, trooper chose not to provide defendant with copy of Spanish-language consent to search form). Under the totality of these circumstances, the court properly determined that Appellant voluntarily consented to the blood draw. **See Miller, supra**. In light of the applicable standard of review, we cannot say that the court erred in denying Appellant's suppression motion. **See Bryant, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 7/5/2024