J-S35022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LAWRENCE JOSEPH DAY :
:
Appellant : No. 216 MDA 2025

Appeal from the Judgment of Sentence Entered January 15, 2025
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s): CP-49-CR-0000009-2021

BEFORE: OLSON, J., MURRAY, J., and LANE, J.

MEMORANDUM BY MURRAY, J.: **FILED: MARCH 3, 2026**

Lawrence Joseph Day (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of two counts of possession of a firearm with an altered manufacturer's number; and one count each of persons not to possess firearms, receiving stolen property, hindering apprehension, possession of a controlled substance, possession with intent to deliver a controlled substance or counterfeit controlled substance (PWID), and possession of drug paraphernalia.[1] Appellant challenges the trial court's denial of his motion to suppress physical evidence, as well as the sufficiency of the evidence supporting his PWID conviction. After careful examination, we

---

[1] 18 Pa.C.S.A. §§ 6110.2(a), 6105(a)(1), 3925(a), 5105(a)(1); 35 P.S. § 780-113(a)(16), (30) and (32).

reverse the PWID conviction and vacate, in part, the judgment of sentence. In all other respects, we affirm.

The suppression court, based on the evidence adduced at Appellant's suppression hearing, issued the following findings of fact:

> On August 6, 2020, [Pennsylvania State Police (PSP)] Trooper [Aaron] Brown [(Trooper Brown)] went to a [three-story] residence at 212 South Shamokin Street in Shamokin[,] PA [(the residence)[2]]. Trooper Brown's purpose for going to th[e] residence was to attempt warrant service on Michael Harlon [(Mr. Harlon), who resided there].
>
> Prior to August 6, Trooper Brown attempted service on Mr. Harlon at the residence, and encountered [Appellant]. [Appellant] had confirmed that Mr. Harlon lived at the residence, forming the basis of the Trooper's decision to attempt service on Mr. Harlon again on August 6, 2020. Trooper Brown was able to identify [Appellant] in the courtroom at the time of [his September 9, 2021, suppression] hearing.
>
> On August 6, [2020,] Trooper Brown, accompanied by other law enforcement, visited the [residence to again attempt service of the warrant]. While Trooper Brown was speaking with [Appellant] at the front door, [law enforcement observed] Mr. Harlon exit[] the residence from the back entrance. [Mr. Harlon] was subsequently taken into custody.
>
> Mr. Harlon reported that another individual, Justin Clark [(Mr. Clark)], who was known to law enforcement and had an active warrant, was inside the residence. [Mr.] Clark and [Appellant] are brothers.
>
> Trooper Brown testified that Trooper [Jared] Muir [(Trooper Muir)][3] spoke to [Appellant] about entering the residence. Per

_____

[2] At the suppression hearing, Trooper Brown testified that the residence was located in "a high crime, high drug activity area." N.T., 9/2/21, at 27.

[3] Trooper Muir did not testify at the suppression hearing, despite being subpoenaed. N.T., 9/2/21, at 33.

Trooper Brown's testimony, [Appellant] gave consent to Trooper Muir to go into the residence and search. Trooper Brown testified he did not receive consent from [Appellant] to search the residence, but that Trooper Muir did.

Trooper Brown testified that he spoke to the landlord of the residence, Mr. Dennis Kodak [(Mr. Kodak)], and [stated] that Mr. Kodak gave permission to search the residence. This testimony was objected to [by Appellant,] because Mr. Kodak was not present to testify [at the suppression hearing. The suppression] court permitted this testimony to explain why Trooper Brown felt comfortable entering the residence.

Trooper Brown testified that he entered the residence and, after entry, observed [Mr.] Clark coming down the stairs from the third floor to the second floor. Trooper Brown testified that [Mr.] Clark was taken into custody in the stairwell between the second and third floors. Trooper Brown testified that law enforcement [personnel were] calling out and announcing themselves after their entry [into the residence].

Suppression Court Order, 6/29/22, ¶¶ 1-15 (formatting, capitalization, and punctuation modified; footnotes added).

Significant to this appeal, law enforcement then conducted a limited protective sweep of the residence to ensure officer safety, and to confirm there were no other occupants in the residence. As the suppression court explained:

Trooper Brown testified that after taking Mr. Clark into custody, law enforcement conducted a security sweep for any other individuals in the residence. During the security sweep, the troopers located nothing in plain view on the first or second floors of the residence. On the third floor, Trooper Brown observed, in plain view, a pipe consistent with smoking methamphetamines, red baggies, and a large sum of money. After seizing these items, Trooper Brown called [PSP] Corporal [Daniel] Woody [(Corporal Woody)] and requested him to apply for a search warrant for controlled substances in the residence.

The affidavit of probable cause for the search warrant states [Appellant] denied consent to enter the residence to search for

- 3 -

Mr. Harlon.[4] The affidavit of probable cause indicates two people with warrants were taken into custody at the residence and, during a security sweep, items were seen in plain view.

Upon execution of the search warrant, law enforcement seized suspected [synthetic marijuana], marijuana, marshmallow leaf, and two handguns. Each handgun had obliterated serial numbers[. The handguns and contraband were] located in Room #3 [(room 3)], on the second floor, underneath a bed, in a black bag. … [Room 3 was] a bedroom alleged to be [Appellant's] and Ms. Toni Swigart's [(Ms. Swigart)] room.

Suppression Court Order, 6/29/22, ¶¶ 16-23 (formatting, capitalization, and punctuation modified; footnotes added).

In January 2021, the Commonwealth charged Appellant with the above-mentioned offenses.[5] It also charged him with endangering the welfare of children (EWOC) and possession of a small amount of marijuana.[6]

_____

[4] At the suppression hearing, the affidavit of probable cause was admitted into evidence as Commonwealth Exhibit 2.

[5] Regarding the PWID charge, the criminal complaint charged Appellant, in relevant part, as follows:

[Appellant], not being registered under the Controlled Substance, Drug, Device and Cosmetic Act, … did knowingly manufacture, deliver, or possess with intent to manufacture or deliver a green leafy substance used for creating synthetic marijuana, a controlled substance, or knowingly create, deliver or possess with intent to deliver a counterfeit controlled substance [], in violation of [35 P.S. §] 780-113(a)(30)[.]

Criminal Complaint, 1/8/21 (Count 1 – PWID).

[6] 18 Pa.C.S.A. § 4304(a)(1); 35 P.S. § 780-113(a)(31)(i).

Appellant filed his suppression motion on February 16, 2021. Appellant sought suppression of, *inter alia*, all physical evidence seized from the residence. ***See*** Motion to Suppress, 2/16/21, ¶¶ 8-11. Appellant asserted his arrest

> was illegal because it was without probable cause, was not pursuant to any lawful or properly prepared search or arrest warrant as to [Appellant], nor were there any exigent circumstances to justify a warrantless search of [Appellant's] property. Any physical evidence obtained from the person of [Appellant] was the product of, and tainted by, the illegal obtaining of said evidence.

***Id.*** ¶¶ 8-9.

The suppression hearing occurred on September 2, 2021.[7] Trooper Brown and Corporal Woody testified for the Commonwealth, consistent with the above-described factual recitation. ***See*** N.T., 9/2/21, at 6-39. Appellant testified as the sole defense witness. Appellant denied consenting to a search of the residence, testifying, "I can't give consent to [search] a house that's not mine." ***Id.*** at 43. ***But see also id.*** at 8 (Trooper Brown testifying that a few days prior to Appellant's arrest, Trooper Brown knocked on the front door to the residence and Appellant answered). However, on cross-examination, Appellant admitted that his girlfriend, Ms. Swigart, resided at the residence,

---

[7] Following the suppression hearing, on February 25, 2022, the Commonwealth filed a response in opposition to Appellant's suppression motion.

and that he visited her "on a daily basis." *Id.* at 47. Appellant also admitted that he had mail sent to him at the residence. *Id.* at 47.

On June 29, 2022, the suppression court entered an order, with accompanying findings of fact and conclusions of law pursuant to Pa.R.Crim.P. 581(I), that, *inter alia*, denied Appellant's motion to suppress physical evidence.

The matter proceeded to a jury trial on September 12, 2024. The Commonwealth presented testimony from Trooper Brown, Corporal Woody, Trooper Muir, as well as PSP Trooper Kevin Kearney (Trooper Kearney).

Trooper Kearney stated he assisted in executing the search warrant at the residence, and testified at length as to the items seized. *See* N.T., 9/12/24, at 65-104. Trooper Kearney identified some of these items as controlled substances, namely, marijuana and synthetic marijuana,[8] some of which was in packaging. *Id.* at 72-73, 75, 82-83. Trooper Kearney further testified that all of the evidence seized from the residence was "sent to the lab for testing." *Id.* at 91.

Trooper Brown testified that upon execution of the search warrant for the residence, police seized numerous items of contraband from room 3, *i.e.*, the bedroom reported to be Appellant's and Ms. Swigart's. *Id.* at 34. Trooper Brown stated that he

---

[8] Both marijuana and synthetic marijuana are classified as Schedule I controlled substances. 35 P.S. §§ 780-104(1)(iv) and (1)(vii).

seized one cell phone. There was packaging material …[;] I believe it was the red baggies. …. **There was a plastic bag with green vegetable matter, which I believe was later identified as** [**synthetic marijuana**]. …. [**T**]**here was a bag of marijuana.** There w[ere] an additional two cell phones. There w[ere] three digital scales. There was another plastic bag containing baggies that were packaging material. There was a CBD vape cartridge that we seized, a bag containing gummies, [and] a green turtle smoking device … for smoking narcotics.

So all of that, as well as, during the search, underneath the bed within [] room [3, police] seized two firearms. One was a Taurus revolver that was a .45 caliber …. …. [T]he other firearm was … [a] Smith and Wesson .38 caliber revolver pistol that also had an obliterated serial number.

*Id.* at 34-35 (emphasis added; paragraph break omitted; punctuation modified).

Trooper Brown further testified that "there was indicia [indicating Appellant resided] in [] room [3], such as a Social Security card in a drawer that had his name on it." *Id.* at 33; *see also id.* at 40-41 (Trooper Brown testifying there was also indicia of Appellant's presence on the third floor, namely, two cardboard boxes that were addressed to Appellant at the residence).

Significantly, at a sidebar during Trooper Brown's testimony, the Commonwealth introduced a PSP forensic laboratory report (the lab report) that, *inter alia*, identified certain items seized from the residence as controlled substances, and detailed the weights of the respective substances. N.T., 9/12/24, at 40-41; Commonwealth Ex. 65. Later in the trial, the trial court admitted the lab report into evidence. *Id.* at 107.

Although Appellant did not initially object when the Commonwealth proffered the lab report, he objected when the Commonwealth rested its case. *Id.* at 108-09. Appellant pointed out that (1) the Commonwealth presented no witness at trial to authenticate the lab report; and (2) "there was no prior notice" from the Commonwealth that it intended to introduce the lab report at trial in lieu of "the testimony of an expert witness[.]"[9] *Id.* at 109. The prosecutor responded that the Commonwealth "provided the evidence [of the lab report]," which was "admitted into evidence under no objection at the time, and the jury … has already heard [about the lab report] through testimony." *Id.* at 109-10. Appellant's counsel countered, "I believe … the issue is usually preserved so long as [an objection is] raised during the trial." *Id.* at 114.

The trial court sustained Appellant's objection.[10] *Id.* at 114 (trial court stating, "since [Appellant's counsel] raised [the objection] as soon as the

---

[9] Pennsylvania Rule of Criminal Procedure 574 provides, in relevant part, as follows: "In any trial, the attorney for the Commonwealth may seek to offer into evidence a forensic laboratory report supported by a certification, … in lieu of testimony by the person who performed the analysis or examination that is the subject of the report." Pa.R.Crim.P. 574(a); *see also* Pa.R.Crim.P. 574(b) (governing notice requirements). In the instant case, the prosecutor conceded at trial that the Commonwealth filed no Rule 574 notice. N.T., 9/12/24, at 116.

[10] Although the trial court sustained Appellant's objection, it stated, "[I]n light of my decision on the lab [report,] I certainly would allow the Commonwealth to reopen their case if they want to present anything else on that." N.T., 9/12/24, at 115. The prosecutor declined to present any further evidence, stating, "Your Honor, we do not have the lab tech here." *Id.*

Commonwealth rested its case[,] … it's a proper objection."). ***But see also***

***Commonwealth v. Baumhammers***, 960 A.2d 59, 73 (Pa. 2008) ("[I]t is

axiomatic that issues are preserved when objections are made timely to the

error or offense[,]" and "an absence of contemporaneous objections renders

an appellant's claims waived." (citations and quotation marks omitted)). **The**

**trial court excluded the lab report from evidence.**[11] ***Id.*** at 114, 123.

The court issued the jury a cautionary instruction regarding the lab report,

stating it is "no longer enter[ed] into evidence[,] so [] you cannot … consider"

the lab report "as evidence." ***Id.*** at 123.

Following the close of the Commonwealth's case, Appellant raised oral

"motions for demurer."[12] ***Id.*** at 117. Appellant argued the Commonwealth

failed to present sufficient evidence to prove the charges of PWID, possession

of a controlled substance, possession of a small amount of marijuana, and

_____

[11] The trial court also excluded two other PSP reports related to forensic examination of the firearms found in room 3, both of which had been admitted into evidence. N.T., 9/12/24, at 114, 123 (trial court excluding these reports, *i.e.*, Commonwealth Exhibits 63 and 64); ***see also id.*** at 36-37 (trial court admitting Exhibits 63 and 64 into evidence). However, Exhibits 63 and 64 are not pertinent to the issues Appellant raises on appeal.

[12] Preliminary objections in the nature of a demurrer are raised in civil, as opposed to criminal, actions. ***See*** Pa.R.C.P. 1028(a)(4) (governing preliminary objections related to "legal insufficiency of a pleading (demurrer)"); ***C.G. v. J.H.***, 172 A.3d 43, 54 (Pa. Super. 2017) ("A demurrer tests only whether, as a matter of law, the pleaded allegations may entitle the pleader to relief."). ***But see also*** Appellant's Brief at 11 (characterizing a "motion for demur [*sic*]" as a motion for "judgment of acquittal," which we discuss *infra*).

EWOC. *Id.* at 117-18. Regarding the drug offenses, Appellant averred the Commonwealth failed to establish that police seized any controlled substances from the residence. *Id.* at 117 (asserting the Commonwealth did not "establish[] that it is a controlled substance[,] and that's one of the requirements for" a conviction of PWID). The prosecutor countered, with respect to PWID

> and the additional counts regarding the possession of controlled substance, the [PWID statute, 35 P.S. § 780-113(a)(30),] does indicate that it can be a counterfeit controlled substance. That is, if it's a counterfeit substance being sold, that is considered PWID as well. So … []regardless of whether or not these items were, in fact, [il]licit controlled substances, they were being packaged. You know, the scales, the packaging material, and the other evidence … that [police found in the residence] … would give weight to … [a finding that Appellant's conduct] fits [] section [780-113(a)(30),] even without the lab [report] results confirming the substances.

*Id.* at 118 (punctuation and formatting modified). Appellant responded that "[t]here was no testimony offered as to whether [the substances police seized were] counterfeit." *Id.* at 119.

The trial court dismissed the charges of EWOC and possession of a small amount of marijuana. *Id.* at 119, 121-22. The trial court declined to dismiss the charges of PWID or possession of a controlled substance.[13] *Id.* at 122.

_____

[13] The trial court, in instructing jury on the PWID charge, included an instruction on "possession with intent to manufacture or deliver a **counterfeit** controlled substance." N.T., 2/27/25, at 147 (emphasis added); *see also id.* at 148 (trial court defining "counterfeit controlled substance"). However, in its charge, the court also repeatedly referenced "controlled substances" when

*(Footnote Continued Next Page)*

Ms. Swigart testified as the sole defense witness. Ms. Swigart asserted Appellant did not reside at the residence. N.T., 9/12/24, at 127. According to Ms. Swigart, Appellant only visited her at the residence and stayed overnight "maybe a couple times." *Id.* at 126.

At the conclusion of trial, the jury found Appellant guilty of the above-mentioned offenses.[14] The trial court deferred sentencing for the preparation of a presentence investigation report.

On January 15, 2025, the trial court imposed an aggregate sentence of three to six years in prison.[15] Appellant did not file post-sentence motions.

_____

explaining the definition of PWID. *Id.* at 147 (trial court instructing that "[t]he controlled substance must be possessed and it must be possessed not for personal use, but for the specifically intended purpose of selling or delivering it to another person or persons.").

[14] Regarding the PWID count, the jury found Appellant guilty of "possession with intent to deliver a counterfeit controlled substance[.]" N.T., 9/12/24, at 178.

[15] The trial court structured its sentence as follows:

- Possession of a firearm with altered manufacturer's number (Count 2): Three to six years in prison;

- Possession of a firearm with altered manufacturer's number (Count 3): Three to six years in prison, running concurrent with Count 2;

- Persons not to possess firearms (Count 4): Three to six years in prison, running concurrent with Count 3;

- PWID (Count 1): Nine months to two years in prison, running concurrent with Count 2;

*(Footnote Continued Next Page)*

This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents two issues for our review:

I. Did the trial court err when it denied [Appellant's] motion to suppress physical evidence seized from [the residence]?

II. Did the trial court err when it denied [Appellant's] demur [*sic*] regarding the charge of [PWID]?

Appellant's Brief at 6 (capitalization modified).

Appellant first argues the suppression court improperly denied suppression of the physical evidence seized from the residence,[16] where police entered without a warrant, and after apprehending the two known fugitives

_____

- Possession of a controlled substance (Count 6): No further penalty;

- Possession of drug paraphernalia (Count 8): No further penalty;

- Hindering apprehension (Count 9): No further penalty;

- Receiving stolen property (Count 10): No further penalty.

N.T., 1/15/25, at 8-9.

[16] We observe that the suppression court, in its conclusions of law accompanying the order denying Appellant's suppression motion, offered scant analysis regarding the merits of Appellant's suppression challenge. The suppression court briefly discussed the law surrounding "protective sweeps" to ensure officer safety (which we explain *infra*), and determined that "[i]tems were seen in plain view during the security sweep." Suppression Court Order, 6/29/22, ¶¶ 6-7; ***see also*** Trial Court Opinion, 6/12/25, at 3 (adopting the suppression court's opinion, without further analysis, in support of the denial of Appellant's suppression motion).

(*i.e.*, Mr. Clark and Mr. Harlon), performed an unjustifiable protective sweep for officer safety that revealed contraband in plain view. ***See id.*** at 8-11. Appellant claims all physical evidence should have been suppressed as the fruit of an illegal search. ***Id.*** at 10-11.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Lewis***, ___ A.3d ___, 37 EAP 2024 (Pa. filed Sept. 25, 2025), slip op. at 3 (citations omitted). "We are bound by the facts found by the [suppression] court so long as they are supported by the record, but we review its legal conclusions *de novo*." ***Commonwealth v. Rivera***, 316 A.3d 1026, 1031 (Pa. Super. 2024). "Our scope of review is limited to the record of the suppression hearing." ***Lewis***, *supra*, at 3 (citation omitted).

"Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted." ***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017) (citation omitted). "If the record supports the suppression court's findings, we may not substitute our own findings." ***Commonwealth v. Carmenates***, 266 A.3d 1117, 1123 (Pa. Super. 2021) (*en banc*) (citation omitted). Further, "it is within the suppression court's sole province as factfinder to pass on the

credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Ochoa***, 304 A.3d 390, 396 (Pa. Super. 2023) (citation and brackets omitted); ***see also In the Interest of L.J.***, 79 A.3d 1073, 1080 n.6 (Pa. 2013) ("[O]ur standard of review is highly deferential with respect to the suppression court's factual findings and credibility determinations.") (citation omitted)). "The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Byrd***, 185 A.3d 1015, 1019 (Pa. Super. 2018) (citation omitted). "Moreover, the law is well settled that if the record supports the result reached by the suppression court, we may affirm on any ground." ***Commonwealth v. Layer***, 340 A.3d 352, 359 (Pa. Super. 2025) (*en banc*) (citation omitted).

"At a suppression hearing, the Commonwealth has the burden of establishing by a preponderance of the evidence that the evidence was properly obtained." ***Commonwealth v. Heidelberg***, 267 A.3d 492, 498 (Pa. Super. 2021) (*en banc*) (citation and quotation marks omitted); ***see also*** Pa.R.Crim.P. 581(H).

> When an officer effectuates an unlawful arrest, any evidence seized during a search incident to the arrest must be suppressed. Consequently, the propriety of a search depends upon the validity of the arrest. The remedy for illegal searches and seizures is exclusion of the evidence.

***Heidelberg***, 267 A.3d at 499 (internal citations and quotation marks omitted). This Court has stated the suppression of evidence "is a most extreme remedy that can be justified only when it is necessary to vindicate

- 14 -

fundamental rights or to correct or deter police abuse." ***Commonwealth v. Huntington***, 924 A.2d 1252, 1259 (Pa. Super. 2007) (citation and quotation marks omitted).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution both prohibit unreasonable searches and seizures. ***Commonwealth v. Thompson***, 289 A.3d 1104, 1107 (Pa. Super. 2023).

> As a general rule, a [search] warrant stating probable cause is required before a police officer may search for or seize evidence. Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable.

***Heidelberg***, 267 A.3d at 502 (internal citations and quotation marks omitted); ***see also Commonwealth v. Taylor***, 771 A.2d 1261, 1266 (Pa. 2001) ("Not every search must be conducted pursuant to a warrant, for the Fourth Amendment bars only unreasonable searches and seizures." (citation omitted)).

One recognized exception to the warrant requirement is the plain view doctrine. Our Supreme Court has explained that

> [t]he plain view doctrine is [] applicable to seizure issues under both the Fourth Amendment and Article I, Section 8. Under the plain view doctrine, the police may effectuate a warrantless seizure of an item if: (1) the police view the item from a lawful vantage point; (2) the incriminating nature of the item is immediately apparent; and (3) the police have a lawful right of access to the item.

*Commonwealth v. Saunders*, 326 A.3d 888, 897 (Pa. 2024) (internal citations, quotation marks, footnote, and ellipses omitted).[17]

Instantly, Appellant claims the suppression court erred in declining to suppress the physical evidence, where law enforcement

> went beyond the scope of a protective sweep[,] as they found and placed into custody wanted persons in the [residence] before seeing items in plain view that served as the basis for the search warrant[.]

Appellant's Brief at 12. According to Appellant,

> [t]he need for the protective sweep in this case ended when Trooper Brown had [Mr.] Clark in custody[,] before he saw [incriminating] items on the third floor. Trooper Brown did not articulate specific facts to justify a reasonable fear for his safety or others after he had [Mr.] Clark in custody on the stair[]well in between the second and third floor.

*Id.* at 10 (punctuation modified); *see also id.* ("[Trooper Brown] did not see anything in plain view until after he had [Mr.] Harlon and [Mr.] Clark in custody.").

The Commonwealth counters the suppression court properly declined to suppress the physical evidence, where law enforcement entered the residence with consent and, while performing a legitimate protective sweep for police

---

[17] Another recognized exception to the warrant requirement exists for "consent, voluntarily given." *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000). "To be considered valid, the consent must be the product of an essentially free and unrestrained choice—not the result of duress or coercion, express or implied, or a will overbo[]rne—under the totality of the circumstances." *Carmenates*, 266 A.3d at 1124 (citation omitted).

protection, observed contraband in plain view. *See* Commonwealth's Brief at 9-13. The Commonwealth asserts that following law enforcement's lawful entry into the residence,

> [t]here was already one criminal apprehended at the [residence, *i.e.*, Mr. Harlon. Mr. Harlon] advised [the troopers] that there was yet another [fugitive] within the [residence, *i.e.*, Mr. Clark]. [The troopers] then checked each room on each floor for the criminal that was alleged to be inside. As they ascended the steps to the third floor, [Mr. Clark] started down the steps. **It's not reasonable to … suggest that the police should not have proceeded to check the third-floor room from where** [**Mr. Clark**] **alighted.** During the course of the sweep of the third floor, which amounted to looking in a bedroom, [the troopers] viewed, in plain sight[, contraband.]

*Id.* at 11 (emphasis added; punctuation modified). According to the Commonwealth, "[t]o not do a sweep of the room [that Mr. Clark] just came out of, if for no other reason than to verify that he was the only one in the room, is foolish, dangerous and puts the Troopers at risk." *Id.* at 13 (punctuation modified).

"It is well[ ]settled that under emergent circumstances, protective sweeps are a well-recognized exception to the warrant requirement." *Commonwealth v. Potts*, 73 A.3d 1275, 1281 (Pa. Super. 2013) (citation, brackets, and quotation marks omitted).

> Police may perform a protective sweep as an incident to a lawful arrest, in order to protect the safety of police officers and others. *See* [*Maryland v. Buie*], 494 U.S. 325, 327 …. (1990). In such circumstances, officers may look into "spaces immediately adjoining the place of arrest from which an attack could be immediately launched" without any degree of suspicion other than that necessary to support the arrest. *Buie*, 494 U.S. at 327. A protective sweep beyond such immediately adjoining areas is

- 17 -

proper if police can articulate specific facts to justify a reasonable fear for the safety of police officers or others. We consider the information available to police at the time of the sweep from the perspective of a reasonably prudent police officer.

*Commonwealth v. Tashawn-Tyrell*, 340 A.3d 1015, 1023 (Pa. Super. 2025) (quoting *Commonwealth v. Hall*, 199 A.3d 954, 959 (Pa. Super. 2018)); *see also Potts*, 73 A.3d at 1280-81 ("[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." (quoting *Ryburn v. Huff*, 565 U.S. 469, 477 (2012)).

This Court has further explained that a protective sweep "is for persons. It cannot be used as a pretext for an evidentiary search. It cannot be lengthy or unduly disruptive. It must be swift and target only those areas where a person could reasonably be expected to hide."

*Tashawn-Tyrell*, 340 A.3d at 1023 (quoting *Commonwealth v. Crouse*, 729 A.2d 588, 598 (Pa. Super. 1999)). "[T]he scope of a protective sweep extends only to a visual inspection of those places in which a person might be hiding and lasts no longer than is necessary to dispel the fear of danger[.]" *Taylor*, 771 A.2d at 1268 (Pa. 2001) (citations omitted); *see also Potts*, 73 A.3d at 1282 (explaining a proper protective sweep is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." (quoting *Buie*, 494 U.S. at 327)). Finally, this Court has stated that "[i]**f, while conducting a** [**lawful**] **protective sweep,** [**an**] **officer should ... discover contraband other than weapons, he**

- 18 -

**clearly cannot be required to ignore the contraband**[.]" ***Potts***, 73 A.3d at 1282 (emphasis added; citation and brackets omitted); ***see also Commonwealth v. Harrell***, 65 A.3d 420, 437 (Pa. Super. 2013) (same).

In the instant case, we are guided by our analogous decision in ***Crouse***, 729 A.2d 588. In that case, PSP troopers traveled to the defendant's residence for the purpose of serving a lawful arrest warrant on the defendant's father (the arrestee). ***Id.*** at 590. The arrestee permitted the troopers' entry into the home. ***Id.*** Upon entering, the troopers heard a woman on the second floor, later identified as the defendant's mother, shouting in alarm to a third person, who was out of sight. ***Id.*** The troopers "immediately proceeded to the second floor, to secure the [home] for the safety of the officers[,]" while announcing their identity. ***Id.*** A trooper observed the defendant in a bedroom. ***Id.*** The trooper "made a quick scan of the bedroom for weapons and saw a [marijuana] smoking pipe in plain view on the night stand." ***Id.*** at 591 (citation omitted). The defendant admitted that he owned the pipe and used it to smoke marijuana. ***Id.***

Police arrested the defendant and charged him with possession of drug paraphernalia. ***Id.*** at 590. The defendant filed a suppression motion, which the suppression court denied. ***Id.***

On appeal, the defendant challenged the denial of his suppression motion, asserting "the 'warrantless' entry and search of his room was *per se*

impermissible under Article I, Section 8 of the Pennsylvania State Constitution." *Id.* at 594. This Court affirmed.

Initially, we determined that police were lawfully inside the defendant's home, where the arrestee permitted their entry. *Id.* at 593, 598. We held "limited protective sweeps have a place in Pennsylvania law[,]" *id.* at 597, and observed as follows:

> The ***Buie*** Court's … [holding] allows arresting officers to take reasonable steps to ensure their safety **after, and while making, an arrest if justified by the circumstances**, so long as the search conducted is not a full search of the premises, but only a search limited to a cursory inspection of those spaces where a person may be found. In balance, the safety of the officers sufficiently outweighs the intrusion on individual privacy interests such procedures may entail. ***See Buie, supra***.

*Id.* at 596 (emphasis added).

Applying ***Buie***, this Court held that "[t]he sweep in the instant case complies with [the] standards as established in ***Buie***." *Id.* at 598.

> Having been lawfully admitted into the house, the officers checked the areas immediately adjacent to the arrestee. While proceeding to execute the arrest warrant, [police] were suddenly made to realize that at least two other persons were in the house and hidden from view. When they heard the arrestee's spouse calling in alarm for a third person, **the officers simply could not take the chance of an ambush from the second floor.** Moreover, their sweep of the second-floor area was limited to "living spaces." There is no evidence of record that either the scope or duration of the search was excessive. Here, **the officers were forced to make split-second decisions about what they needed to do to protect themselves in a rapidly unfolding scenario of changing circumstances**. To expect the officers to wait for an overt act of hostility before they are allowed to try to neutralize the threat of physical harm is simply unwise[,] especially where they are in a known drug-trafficking location which also happens to be the dealer/arrestee's home turf.

- 20 -

*Id.* (emphasis added). Accordingly, we concluded that "the limited protective search in this case did not violate Article I, Section 8 of our state [C]onstitution." *Id.*

Instantly, like the circumstances in *Crouse*, the troopers, after lawfully entering the residence—which was located in a high-crime area—had the authority to perform a limited protective search for officer safety. *See id.* Appellant is correct that, at the time of the protective search, the troopers had both Mr. Clark and Mr. Harlon in custody. Nevertheless, the troopers, who had just observed a fugitive flee down the stairs from the third floor, reasonably conducted a protective search to ascertain whether any additional individuals were present, who could endanger the troopers while they exited the residence. As in *Crouse*, the troopers "simply could not take the chance of an ambush from the [third] floor." *Id.*

As Trooper Brown testified at the suppression hearing:

[W]e were doing a security sweep because we don't know who else is in the residence. There was already two warrants out of the house. So we were making sure for our safety[,] we were providing a security sweep.

N.T., 9/2/21, at 25; *see also id.* at 27 (Trooper Brown testifying that the residence was located in "a high crime" area).

Further, there is no evidence of record that law enforcement exceeded either the permissible scope or duration of a lawful protective search, or performed anything other than "a quick and limited search of" the residence.

- 21 -

***Potts***, 73 A.3d at 1282. ***Cf. Layer***, 340 A.3d at 356-57, 363-64, 366-67 (in a Commonwealth appeal, affirming the trial court's grant of the defendant's suppression motion, where police (1) knocked on the front door to the defendant's home to serve an arrest warrant upon the defendant's paramour (codefendant); (2) observed movement in a second-floor window, after placing codefendant in custody; (3) entered the home to perform a "protective sweep on the second floor [] to look for individuals who might interfere with the arrest or create a security threat"; (4) proceeded through the open door of a second-floor bedroom; and (5) exceeded the permissible scope of a legitimate sweep by, *inter alia*, searching inside closed dresser drawers, which, a police officer conceded, were too small to hide a person).

Finally, contrary to Appellant's assertion, there exists in our jurisprudence no requirement that a lawful protective sweep of a property must cease upon police placing all known fugitives associated with that property in custody. ***See*** Appellant's Brief at 10.

While performing the lawful protective sweep of the third floor, the troopers observed, in plain view, items of immediately-apparent contraband, as well as a large quantity of cash. ***See*** N.T., 9/2/21, at 12. Accordingly, the troopers had the authority to seize the contraband without a warrant, pursuant to the plain view exception. ***Saunders***, 326 A.3d at 897.

Based on the foregoing, under the totality of the circumstances, we conclude that the record contains articulable "facts to justify a reasonable fear

for the safety of police officers or others," and therefore, the troopers were justified in performing a limited protective sweep of the residence. **Tashawn-Tyrell**, 340 A.3d at 1023 (citation omitted); **see also Crouse**, **supra**; **Potts**, **supra**. Appellant's first issue does not merit relief.

In his second issue, Appellant argues the trial court improperly denied his motion for judgment of acquittal on the PWID charge, where the Commonwealth failed to sustain its burden of proving his guilt beyond a reasonable doubt.[18] **See** Appellant's Brief at 11-13. Appellant emphasizes that the trial court excluded the lab report at trial, and asserts the Commonwealth "failed to provide sufficient evidence that [Appellant] had the intent to deliver a controlled substance or counterfeit controlled substance." **Id.** at 13.

The Commonwealth counters the trial court properly denied judgment of acquittal for PWID, where it presented sufficient evidence to prove all elements of PWID beyond a reasonable doubt. **See** Commonwealth's Brief at 13-17. The Commonwealth emphasizes that the search of the residence "produced pipes, baggies, white powder, pills[,] scales and illegal weapons[,] … as well as a significant amount of money." **Id.** at 16. According to the Commonwealth, this evidence would indicate to a reasonable person "that there was [narcotics] selling going on" in the residence. **Id.**

---

[18] Appellant does not challenge his conviction of possession of a controlled substance.

- 23 -

Pursuant to Rule 606 of our Rules of Criminal Procedure, "[a] defendant may challenge the sufficiency of the evidence to sustain a conviction … in … a motion for judgment of acquittal at the close of the Commonwealth's case-in-chief[.]" Pa.R.Crim.P. 606(A)(1).

> The test for ruling upon a motion for judgment of acquittal is whether the prosecution's evidence, and all inferences arising therefrom, considered in the light most favorable to the prosecution are insufficient to prove beyond a reasonable doubt that the accused is guilty of the crimes charged.

*Commonwealth v. Powanda*, 304 A.3d 1284, 1288 (Pa. Super. 2023) (citations, quotation marks, and brackets omitted); *see also Commonwealth v. Sunealitis*, 153 A.3d 414, 420 (Pa. Super. 2016) ("A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." (citation omitted)).

"Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Rosario*, 307 A.3d 759, 764-65 (Pa. Super. 2023) (citation omitted).

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its

burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Sunealitis*, 153 A.3d at 419 (citation omitted). "Any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Lake*, 281 A.3d 341, 346 (Pa. Super. 2022) (citation omitted). "Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Bostick*, 958 A.2d 543, 560 (Pa. Super. 2008) (citation omitted).

However, this Court has recognized that

[a]lthough the fact finder may make reasonable inferences from the testimony presented, the "inferences must flow from facts and circumstances **proven in the record**, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt."

*Commonwealth v. Spence*, 290 A.3d 301, 309 (Pa. Super. 2023) (quoting *Commonwealth v. Scott*, 597 A.2d 1220, 1221 (Pa. Super. 1991) (emphasis added)). "The trier of fact cannot base a conviction on conjecture and speculation[,] and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review." *Id.* (citation omitted).

The statute governing PWID prohibits

the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not

registered under this act, … or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.[19]

35 P.S. § 780-113(a)(30) (footnote added). "[T]he Commonwealth must prove both the possession of the controlled substance" or counterfeit substance, **as well as the intent to deliver the substance**. *Bostick*, 958 A.2d at 560 (citation omitted).

This Court has stated that

[w]hen reviewing a challenge to the sufficiency of the evidence with regards to a PWID conviction, we are mindful that

[t]he Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance. It is well settled that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with intent to deliver.

In Pennsylvania, the intent to deliver may be inferred from possession of a large quantity of controlled substance. It follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver. Notably, if, when

_____

[19] Section 780-102 defines "counterfeit" as follows:

[A] controlled substance, other drug, device or cosmetic which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed such substance and which thereby is falsely purported or represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser.

35 P.S. § 780-102.

> considering only the quantity of a controlled substance, it is not clear whether the substance is being used for personal consumption or distribution, it then becomes necessary to analyze other factors.

*Commonwealth v. Lee*, 956 A.2d 1024, 1028 (Pa. Super. 2008) (citation and quotation marks omitted). The list of additional factors includes:

> the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and [the] sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

*Commonwealth v. Ratsamy*, 934 A.2d 1233, 1237-38 (Pa. 2007) (citation and quotation marks omitted).

Additionally, "[w]hen contraband is not found on the defendant's person, the Commonwealth must establish constructive possession[.]" *Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa. Super. 2005) (citation omitted); *see also Commonwealth v. Bricker*, 882 A.2d 1008, 1014 (Pa. Super. 2005). This Court has explained,

> [c]onstructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. … We [have] defined conscious dominion as the power to control the contraband and the intent to exercise that control. … To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super. 2011) (citation and quotation marks omitted); *see also Commonwealth v. Kinard*, 95 A.3d 279, 292 (Pa. Super. 2014) (*en banc*) (stating two or more individuals may be deemed to have joint constructive possession of an item of contraband). Moreover, the Commonwealth can prove constructive possession by circumstantial evidence. *Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011).

Instantly, the trial court opined it properly denied judgment of acquittal for PWID, reasoning as follows:

> Since [35 P.S. § 780-113(a)(30)] includes controlled substances or counterfeit controlled substances, and other items were present in [] room [3] that suggest the substances found were controlled substances or counterfeit controlled substances, the jury could infer that the substances were controlled or counterfeit controlled substances. The evidence admitted at trial, [viewed] in the light most favorable to the verdict winner, constituted sufficient evidence to enable the factfinder to find every element of the crime of [PWID] beyond a reasonable doubt.

Trial Court Opinion, 6/12/25, at 4-5. We disagree.

Following our review of the record, we conclude that the Commonwealth failed to present sufficient evidence, even when viewed in the light most favorable to the Commonwealth, for the jury to properly find Appellant guilty of PWID. *See Scott*, 597 A.2d at 1221 ("The trier of fact cannot base a conviction on conjecture and speculation"). As discussed *supra*, the trial court excluded the lab report from evidence. N.T., 9/12/24, at 114, 123. Moreover, the prosecutor admitted at trial that the Commonwealth neither issued a

pretrial Rule 574 notice, nor presented **any** expert testimony. *Id.* at 116; *see also Ratsamy*, 934 A.2d at 1238 ("Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use." (citation omitted)).

The Commonwealth presented no admissible evidence with respect to the quantity or identity of the purported controlled substances (or, alternatively, counterfeit controlled substances) that police seized from room 3. Further, the Commonwealth presented no testimony as to whether the quality or quantity of the evidence demonstrated an intent to deliver, as discussed in *Ratsamy*, *supra*. In light of the foregoing, the jury had no basis for inferring Appellant's "intent to deliver … from possession of a large quantity of controlled substance." *Lee*, 956 A.2d at 1028.

Finally, we are unpersuaded by the Commonwealth's, and the trial court's, assertion that the PWID conviction is supported by sufficient evidence, where the Commonwealth purportedly established Appellant possessed counterfeit controlled substances with the intent to deliver. As Appellant correctly argued at trial, regarding his motion for judgment of acquittal on the PWID charge, "[t]here was no testimony offered as to whether [the substances police seized were] counterfeit." *Id.* at 119.

Based on the foregoing, we are constrained to vacate Appellant's PWID conviction. *Cf. Ratsamy*, 934 A.2d at 1235, 1238 (upholding the defendant's

PWID conviction, and reversing this Court's contrary decision, where this Court erred by (1) disregarding the opinion of the Commonwealth's expert, *i.e.*, a police officer who was qualified as "an expert in narcotics" and testified that the defendant "possessed the drugs with the intent to deliver based upon the amount of cocaine in the form possessed by [the defendant], together with [] new and unused plastic bags recovered from [the defendant's conspirator]"; and (2) "fail[ing] to afford the prevailing party[, the Commonwealth,] the full effect of its having prevailed upon an issue in the trial court." (citation and quotation marks omitted)).

However, because vacating the PWID conviction does not disturb the trial court's overall sentencing scheme (*i.e.*, where the court ordered Appellant to serve his sentence for PWID concurrently with his other sentences), no remand for resentencing is required. **See Commonwealth v. Thur**, 906 A.2d 552, 569 (Pa. Super. 2006) ("[I]f our decision does not alter the overall [sentencing] scheme, there is no need for a remand."); **see also Commonwealth v. Henderson**, 938 A.2d 1063, 1067 (Pa. Super. 2007) (stating that "since appellant's sentences were concurrent, the trial court's overall sentencing scheme has not been compromised, and it [wa]s not necessary to remand for re-sentencing" after this Court held the sentence imposed on one count to be unlawful).

PWID conviction reversed. Judgment of sentence vacated, in part. Jurisdiction relinquished.

Judge Lane joins the memorandum.

Judge Olson files a concurring/dissenting memorandum.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/03/2026